**Opinion filed July 13, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00294-CV

_____

**LG CHEM, LTD., Appellant**

**V.**

**TASHIA HERNANDEZ, Appellee**

_____

**-- and --**

_____

## No. 11-22-00008-CV

_____

**LG CHEM AMERICA, INC., Appellant**

**V.**

**TASHIA HERNANDEZ, Appellee**

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CV1901031**

## MEMORANDUM OPINION

Appellee, Tashia Hernandez, sued Appellants, LG Chem, Ltd. (LG Chem), LG Chem America, Inc. (LGCAI), and others for injuries she suffered when an 18650 lithium-ion battery exploded in her purse. Hernandez alleges that the battery was manufactured by LG Chem and distributed in Texas by LGCAI. Hernandez, a Texas resident, purchased the product in a Texas retail store, Cloud 9 Vape, and was injured in Texas.

LG Chem and LGCAI each filed a special appearance challenging the trial court's personal jurisdiction over both companies. The trial court denied the special appearance as to both companies. LG Chem and LGCAI each filed an appeal.[1] In the wake of the appeals before us, the Texas Supreme Court issued its opinion in *LG Chem America, Inc. & LG Chem, Ltd. v. Morgan*, No. 21-0994, 2023 WL 3556693, at *1 (Tex. May 19, 2023). We affirm.

*Factual and Procedural History*

Hernandez purchased a lithium-ion battery from Cloud 9 Vape, located in Early, Texas. Hernandez was injured when the battery exploded in her purse, catching her purse, pants, undergarments, and shirt on fire, resulting in second- and third-degree burns. LG Chem manufactures 18650 lithium-ion batteries. Hernandez alleged in her petition that the battery which caused her injuries was manufactured by LG Chem and was marketed, sold, distributed, or otherwise placed into the stream of commerce by LG Chem and/or LGCAI.

In her Second Amended Petition, Hernandez alleged that the trial court had jurisdiction over LG Chem because the company was "conducting business in the State of Texas in a continuous and systematic manner by marketing and/or selling its manufactured products in the State of Texas to Texas entities, including its

---

[1]Although the appeals were filed separately, because they are from the same trial court cause number and the issues on appeal are similar in nature, we address both appeals together in this opinion.

2

subsidiary [LGCAI], and selling its manufactured products through dealers and/or distributors in the State of Texas." Hernandez made similar jurisdictional allegations as to LGCAI, alleging that LGCAI "continues to conduct business in the State of Texas in a continuous and systematic manner by marketing, selling, distributing, and/or importing products manufactured by Defendant [LG Chem] into and throughout the State of Texas." She further alleged that LGCAI maintains a license to do business in Texas, and that LGCAI generates significant revenue from Texas-based sales. Hernandez specifically alleged that LG Chem manufactures the battery that forms the basis of the lawsuit, and that LGCAI distributes those batteries in Texas.

LG Chem is a foreign corporation that is headquartered in South Korea. LGCAI is a domestic corporation that is incorporated in Delaware and headquartered in Georgia. In their special appearance motions, both companies contended that there was no basis on which the trial court could exercise either general jurisdiction or personal jurisdiction over LG Chem or LGCAI. Notably, in the response opposing their special appearances, Hernandez concedes that neither company is "at home" in Texas for purposes of general jurisdiction. Thus, the only jurisdictional issue before the trial court was whether it could exercise personal jurisdiction over LG Chem and LGCAI.

During the hearing on the special appearance motions, LG Chem and LGCAI, in carefully crafted language, maintained that they never targeted or sought to "serve a market for standalone consumer batteries in Texas or any place else." This oft-repeated, jurisdictionally-directed language used by LG Chem and LGCAI in their motions and briefs appears calculated to limit the relevant market forum for the State of Texas to a narrower consumer market segment. At no point did LG Chem or LGCAI argue that they did not market 18650 cells in Texas or that LG Chem does not manufacture these batteries. They argue that they did not serve a market for

3

"standalone consumer batteries," rather than denying that they manufacture or sell them in Texas at all. While Appellants attempted to cast doubt on Hernandez's documentary sales evidence in support of her petition, Appellants did not object or obtain a ruling as to a lack of authenticity or the admissibility of the evidence. On appeal, LG Chem insinuates that the documentary sales evidence that Hernandez presented to the trial court was undecipherable and thus unreliable, but without any objection to the evidence, the trial court properly considered the sales records presented for the limited purpose of supporting the pleadings and to determine its jurisdiction.

LG Chem argues on appeal that the trial court erred in denying its special appearance because Hernandez failed to allege the existence of purposeful contacts between LG Chem and Texas which relate to or give rise to her claim (*i.e.*, deficient pleadings). LGCAI makes a similar argument, adding that even if LG Chem had contacts in Texas that would be sufficient for purposes of personal jurisdiction, those contacts may not be imputed to LGCAI. LG Chem and LGCAI also argue that Hernandez did not allege any facts to establish that either company "sought to serve any consumer market in Texas, let alone a Texas consumer market for standalone lithium-ion batteries for e-cigarettes."

*Standard of Review and Applicable Law*

Whether a trial court has personal jurisdiction over a non-resident defendant is a question of law that is reviewed de novo. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021). "When, as here, the trial court does not issue findings of fact and conclusions of law with its judgment, we presume all factual disputes were resolved in favor of the trial court's decision unless they are challenged on appeal." *Id.* Texas courts may assert personal jurisdiction over non-residents if the Texas long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction is consistent with federal due process guarantees. *State v.*

*Volkswagen Aktiengesellschaft*, No. 21-00130, 2023 WL 3262271, at \*7 (Tex. May 5, 2023); *see also* TEX. CIV. PRAC. & REM. CODE §§ 17.041, 17.042 (West 2015).

"The 'touchstone of jurisdictional due process' is 'purposeful availment.'" *TV Azteca v. Ruiz*, 490 S.W.3d 29, 45 (Tex. 2016) (quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005)). In determining whether a non-resident's contacts with the forum state break the threshold of purposeful availment, we assess "the quality and nature of the contacts, not the quantity." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013).

"The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). In the landmark case of *International Shoe Co. v. Washington*, the Supreme Court held that this jurisdictional authority depends on the "defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)).

The nature and extent of a defendant's relationship to the forum state is significant with the two types of recognized personal jurisdiction: general and specific. *Id.* General jurisdiction extends to any and all claims against a defendant when that defendant is "at home" in the state; where a defendant's contacts with the forum state are so "continuous and systematic" that the defendant is "essentially at home" as it might be in its state of incorporation and/or its principle place of business. *Volkswagen*, 2023 WL 3262271, at \*7; *see also Ford*, 141 S. Ct. at 1024. This includes claims which do not relate to the forum state or the defendant's activity there, as long as the defendant has the required "set of affiliations" with the

forum state. *Ford*, 141 S. Ct. at 1024 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).

In contrast, the contacts needed for specific jurisdiction are often referred to as "purposeful availment." *Ford*, 141 S. Ct. at 1024 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). This kind of personal jurisdiction involves a "claim-by-claim" analysis that focuses on the relationship between the defendant, the forum state, and the operative facts of the litigation. *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 150. First, the defendant must take some affirmative action by which it purposefully avails itself of the privilege of conducting activities in the forum state, and these acts must be the defendant's own choice—not random, isolated, or fortuitous. *Ford*, 141 S. Ct. at 1024–25. Second, these contacts must show that the defendant deliberately entered into the market of the forum state and that the plaintiff's claims "arise out of or relate to the defendant's contacts" with the forum state. *Ford*, 141 S. Ct. at 1025 (internal citation omitted). There must be a substantial "connection" between the defendant's contacts with the forum state and the operative facts of the litigation. *See id.* at 1026. The substantial connection or affiliation with the forum and the underlying controversy—the activity or occurrence in the forum state must be subject to the State's regulation. *Id.* at 1025 (citing *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017)). The forum is the state as a whole, and "personal jurisdiction is not lacking merely because the plaintiff is outside a *segment* of the market the defendant targeted." *LG Chem America, Inc. & LG Chem, Ltd. v. Morgan*, No. 21-0994, 2023 WL 3556693, at *1 (Tex. May 19, 2023) (emphasis added). The consensus remains that, when a company serves a market for a product in a particular state—and that product causes injury in that state to one of its residents—that state's courts may entertain the resulting lawsuit. *See Ford*, 141 S. Ct. at 1027.

The plaintiff bears the initial burden of pleading a sufficient basis to bring a non-resident defendant within the reach of the long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). If the plaintiff's pleadings are sufficient, the defendant then bears the burden to negate any bases of personal jurisdiction alleged by the plaintiff. *Id.* The defendant may present evidence which contradicts the plaintiff's factual allegations, and the plaintiff can then present its own evidence supporting its pleadings. *Id.* at 659. The defendant may also attack the legal basis of the plaintiff's claims and show that, even if true, the plaintiff's claims are legally insufficient to support personal jurisdiction. *Id.*

*Analysis*

Appellants claim that they have conclusively negated the existence of Texas contacts which would give rise or relate to Hernandez's claims. Appellants each contend that Hernandez's pleadings failed to allege that they served a "consumer market for standalone consumer batteries in Texas" or anyplace else. LGCAI more specifically argues that the evidence presented to the trial court establishes that LGCAI neither manufactured 18650 lithium-ion cells nor marketed, distributed, or sold those cells "for use as standalone batteries" in e-cigarettes.

The facts of this case virtually mirror the facts addressed in the Texas Supreme Court's recent opinion in *Morgan*, 2023 WL 3556693, at *1–2 (where the plaintiff complained that a lithium-ion battery he used to charge his e-cigarette "exploded" in his pocket—the battery was allegedly manufactured by LG Chem and otherwise marketed, sold, distributed, or placed into the stream of commerce in Texas by LG Chem and/or its subsidiary LGCAI). In *Morgan*, the supreme court held that, because LG Chem and LGCAI did not dispute that they purposefully availed themselves of the privilege of doing business in Texas by selling and distributing 18650 lithium-ion cells in Texas, Texas courts had specific personal jurisdiction over LG Chem and LGCAI. *Id.* at *8.

7

LG Chem and LGCAI argue that for specific jurisdiction in product liability cases, *Ford* requires that the defendant target a market for the very consumer product that is at issue. But the *Ford* decision is inapposite to the arguments raised by Appellants. In *Ford*, the United States Supreme Court determined that the state had personal jurisdiction, even though Ford contended that it did not sell, design, or manufacture the *particular* car which caused the injury in that state. *Ford*, 141 S. Ct. at 1026. The Court in *Ford* emphasized that the "causation-only approach" advocated by Ford was *not* a requirement of the "connection" that must be proved between a plaintiff's suit and the defendant's activities in the forum. *Id.* Instead, the rule demands "that the suit 'arise out of *or relate to* the defendant's contacts with the forum.'" *Id.* (quoting *Bristol-Myers*, 582 U.S. at 262). "Arising out of" asks about causation, but use of the language that the suit "relate to" the defendant's contacts contemplates that some relationships will support jurisdiction without a causal showing. *Id.*

In *Ford*, the company admitted that it had ample contacts with the states where the plaintiffs resided and were injured. *Id.* at 1031. Despite the arguments made by Ford that the particular cars that caused the injuries were not sold by the company directly, the Court determined that the company advertised, sold, and serviced the two car models at issue for many years in those states. *Id.* at 1028. Ford enjoyed the benefit and protection of the States' laws, and the plaintiffs were injured in those States—thereby providing the courts of those States jurisdiction over the lawsuits. *Id.* at 1029–1030. However, in the sphere of specific jurisdiction, the phrase "relate to" incorporates real limits, as it must, to adequately protect defendants foreign to a forum.

The *Ford* court likened the case before it to *World-Wide Volkswagen*, where Audi was the manufacturer and Volkswagen was its nationwide importer and distributor. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).

8

The Court stated, "[I]f Audi and Volkswagen's business deliberately extended into Oklahoma (among other States), then Oklahoma's courts could hold the companies accountable for a car's catching fire there—even though the vehicle had been designed and made overseas and sold in New York." *Ford*, 141 S. Ct. at 1027. It continued,

> [I]f the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in [several or all] other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

*Id.*[2] (quoting *World-Wide Volkswagen*, 444 U.S. at 295).

Here, LG Chem and LGCAI do not deny that, in Texas, they have sold the product at issue for incorporation into power tools and other limited applications. But with regard to specific jurisdiction, Appellants urge us to focus on whether the plaintiff is within the particular "industrial component" market they *intended* to serve in Texas. Importantly, the supreme court in *Morgan* held, "[t]his Court has never endorsed the LG Chem defendants' proposed granulation of the forum—the State of Texas—into distinct market segments when evaluating personal jurisdiction." *Morgan*, 2023 WL 3556693 at *5. The precedents of this state "uniformly treat the whole forum—the entire state of Texas—as the relevant market in the minimum-contacts analysis." *Id* at *6.

LG Chem and LGCAI further attempt to distinguish the Texas Supreme Court's holding in *Luciano*. In *Luciano*, defendant SprayFoam employed an

---

[2]The Supreme Court in *Keeton v. Hustler Magazine, Inc.* invoked this part of *World-Wide Volkswagen* to show that when a corporation has "continuously and deliberately exploited [a State's] market, it must reasonably anticipate being hailed into [that State's] court[s]" to defend actions "based on" products causing injury there. *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984) (citing *World-Wide Volkswagen*, 444 U. S. at 297–298); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) (similarly citing *World-Wide Volkswagen*).

independent sales representative in Texas for a period of time, and his primary responsibility was to "find customers." *Luciano*, 625 S.W.3d at 11. The supreme court determined that it was clear that SprayFoam's conduct was directed towards marketing (independent sales representative) and distributing (local distribution center) its products in Texas which was sufficient to determine that SprayFoam purposefully availed itself of the Texas market. *Id.* at 14. The *Luciano* court also determined that Texas was the most logical forum because Texas is where multiple contacts intersected, including where witnesses related to the sale, installation, and remedial services of the product all resided, and where the home receiving the spray foam was located. *Id.* at 19. The court noted that Texas has a strong interest in exercising jurisdiction over controversies arising from injuries sustained from hazardous products that are purposefully brought into the State. *Id.*

In an effort to distinguish the facts at issue from those in *Luciano*, Appellants both argue that neither LG Chem or LGCAI sought to serve—or actually served—a *consumer market* for standalone batteries, nor did they authorize any other party to sell or *market to consumers* as a standalone product; as a result, they argue that *Luciano* is inapplicable to these circumstances. However, similar to *Luciano*, the injuries occurred from the product in Texas, to a Texas resident, and the heart of the litigation is in Texas—just as it was in *Luciano*. *Id.* at 19. Hernandez resides in Texas, Cloud 9 Vape—where she purchased the product—is in Texas, Hernandez was injured in Texas, and she was treated for her injuries in Texas. Additionally, neither company denies that it either manufactured, marketed, or sold 18650 lithium-ion batteries in Texas—only that they did not do so to individual consumers as standalone, replaceable batteries for the purpose of vaping. But the forum is not made up of segments of the market but is the market of the state as a whole. Although the way that Hernandez used (or misused) the battery and whether

10

Appellants authorized that use may be relevant to the merits of the products-liability claims,[3] these contentions are immaterial at this stage of the litigation.

LG Chem alleges that the Supreme Court's holding in *Bristol-Myers* supports its argument for a lack of personal jurisdiction because LG Chem "never sought to serve a consumer market for standalone batteries in Texas or anyplace else." In *Bristol-Myers*, resident and non-resident plaintiffs brought claims in California state court against Bristol-Myers Squibb—the manufacturer of a nationally marketed prescription drug Plavix—alleging the drug damaged their health. *Bristol-Myers*, 582 U.S. at 259. Although the company engaged in business activities in California, the Court held that, because the non-resident plaintiffs did not allege that they obtained the drug from a California source, were injured in California, or were treated for these injuries in California, the California court did not have jurisdiction over Bristol-Myers Squibb as to those plaintiffs. *Id.* at 264–265, 267.

The facts of this case differ significantly from those in *Bristol-Myers*. Hernandez, a Texas resident, purchased the 18650 lithium-ion cell in Texas and was injured in Texas. LG Chem does not deny—and admitted during oral argument—that they serve the Texas market for this product. LG Chem maintains that because they never intended to serve that consumer vaping product segment of the market for the battery cell, they are not able to be sued in Texas for any damages resulting from any use of the product.

The entire argument that specific jurisdiction is determined based on a separate "individual consumer market for standalone batteries" is, quite simply, incorrect. As clarified in *Morgan*, the forum is the state as *a whole*. Personal jurisdiction is not lacking merely because a plaintiff is outside a *segment* of the market the defendant targeted. *Morgan*, 2023 WL 3556693, at *1. "This nuance [of

---

[3]We express no opinion on the relevance of Hernandez's manner of use or the ultimate merits of Appellee's claims. *See also Morgan*, 2023 WL 3556693, at *5 n.4.

which consumer is marketed to] is not relevant for jurisdictional purposes because the longstanding inquiry is whether [a defendant] targeted the Texas market, not whether it targeted the market in a particular industry." *LG Chem, LTD. v. Tullis*, No. 05-21-01056-CV, 2022 WL 16959264, at *5 (Tex. App.—Dallas Nov. 16, 2022, pet. filed) (mem. op.) (quoting *Hause v. LG Chem, Ltd.*, 658 S.W.3d 714 (Tex. App.—El Paso 2022, pet. filed)). Therefore, we look only to whether, as pled, LG Chem and LGCAI had sufficient minimum contacts with Texas, rather than with a particular consumer group in Texas.

The plaintiff bears the initial burden to present the trial court with sufficient pleadings of the defendant's alleged contacts with the forum state and that the injury arose from or related to such contacts. *See Kelly*, 301 S.W.3d at 658. The pleadings are sufficient in this case. As for minimum contacts with Texas, Hernandez alleges in the Second Amended Petition that LG Chem manufactures 18650 lithium-ion batteries and that LG Chem and/or LGCAI distributes the batteries throughout the United States, including Texas.

In the Second Amended Petition, Hernandez also alleges that both LG Chem and LGCAI negligently, recklessly, or carelessly manufactured, fabricated, designed, assembled, distributed, sold, inspected, warranted, labeled, marketed, and advertised the e-cigarette product such that they were dangerous and unsafe for their intended or reasonably foreseeable use. Likewise, Hernandez claims that the companies failed to warn about the foreseeable risks associated with the use of e-cigarette devices and lithium-ion batteries generally. Although the petition names Samsung SDI Co. Ltd. as the manufacturer of the 18650 cell which caused her injuries, Hernandez clarifies in her response to both LGCAI and LG Chem's special appearances that "the entirety of Plaintiff's Complaint makes clear that LG Chem,

12

Ltd. is included and named as a manufacturer of the subject battery."[4]  Thus, Hernandez pled sufficient jurisdictional facts and allegations against LG Chem and LGCAI.  *See Kelly*, 301 S.W.3d at 658.

Because the pleadings are sufficient, LG Chem and LGCAI bore the burden to negate all bases of personal jurisdiction alleged by Hernandez.  *See id.*  Appellants did not carry their burden.  The only evidence LG Chem and LGCAI offered to negate jurisdiction was the affidavits attached to each of the special appearances filed.  The affidavit for Sooha Yang, on behalf of LG Chem, indicates that Yang is a Team Leader of the Global Litigation Team and an authorized representative for LG Chem.  Yang asserts that LG Chem manufactures 18650 lithium-ion cells for use in specific applications by specific companies, and that these cells are not designed or manufactured for sale to individual consumers as standalone batteries.  However, there is nothing to negate the allegation that the LG Chem manufactured 18650 lithium-ion cells were ever marketed, sold, or distributed in Texas.  In fact, the evidence presented by Hernandez in response to the special appearance filed by LG Chem shows the opposite.  Hernandez attached a U.S. Customs document which appears to show LG Chem sent shipments of 18650 lithium-ion batteries to at least two Texas companies: Green Battery Technologies and Lockheed Martin Advanced Energy.[5]

The affidavit for Hyunsoo Kim, on behalf of LGCAI, is similarly lacking. Kim, Compliance Manager and authorized representative for LGCAI, only claims that LGCAI primarily sells and distributes various petrochemicals and that LGCAI

---

[4]Further, this is not contested on appeal, or in either LG Chem or LGCAI's reply to Hernandez's response to the special appearance filed by either company.

[5]This evidence was not objected to during the hearing, though Appellants' attorney questioned the reliability of the documents.

does not manufacture, design, distribute, advertise, or sell lithium-ion cells for use by individual consumers as standalone, replaceable, rechargeable batteries in electronic cigarette or vaping devices. Neither LG Chem or LGCAI—in their respective special appearances, during the hearing before the trial court, in the appellate briefs, or at oral argument—make any argument aside from the fact that they do not sell the battery *as a standalone to individual consumers*. Accordingly, neither company successfully negated the jurisdictional allegations raised by Hernandez.

Because there is sufficient evidence to establish minimum contacts with Texas[6] and because Hernandez's injuries occurred in Texas, requiring Appellants to answer allegations in Texas arising from or related to their contacts within the State comports with notions of fair play and substantial justice. The exercise of personal jurisdiction over LG Chem and LGCAI in this matter is supported by sufficient minimum contacts and is the most efficient resolution of the controversies in this case. Before us are essentially identical facts to those presented in *Morgan*. The allegations made by Hernandez are not materially distinguishable therefrom nor do the special appearance arguments materially vary from those made in that case.

---

[6]We note that there have been a number of cases arising from similar incidents that involve LG Chem and/or LG Chem America in the State of Texas over the past several years where they raised a lack of personal jurisdiction. *See, e.g.*, *LG Chem America, Inc. & LG Chem, Ltd. v. Morgan*, No. 21-0994, 2023 WL 3556693, at *8 (Tex. May 19, 2023) (affirming *LG Chem America, Inc. & LG Chem, Ltd. v. Morgan*, 663 S.W.3d 217 (Tex. App.—Houston [1st Dist.] 2020) (where the court of appeals affirmed the trial court's denial of special appearance)); *LG Chem, Ltd. v. Tullis*, No. 05-21-01056-CV, 2022 WL 16959264, at *6 (Tex. App.—Dallas Nov. 16, 2022, pet. filed) (mem. op.) (affirming the trial court's denial of LG Chem's special appearance); *LG Chem Am., Inc. v. Zapata*, No. 14-21-00695-CV, 2022 WL 16559339, at *6 (Tex. App.—Houston [14th Dist.] Nov. 1, 2022, no pet.) (mem. op.) (reversing the trial court's denial of special appearances by LG Chem and LG Chem America); *Hause v. LG Chem, Ltd.*, 658 S.W.3d 714, 733 (Tex. App.—El Paso 2022, pet. filed) (reversing the trial court's grant of LG Chem's special appearance); *LG Chem, Ltd. v. Turner*, No. 14-19-00326-CV, 2021 WL 2154075, at *1 (Tex. App.—Houston [14th Dist.] May 27, 2021, no pet.) (mem. op.) (reversing the trial court's denial of special appearance by LG Chem, Ltd); *LG Chem, Ltd. v. Granger*. No. 14-19-00814-CV, 2021 WL 2153761, at *1 (Tex. App.—Houston [14th Dist.] May 27, 2021, no pet.) (mem. op.) (reversing the trial court's denial of special appearance by LG Chem, Ltd).

Following our de novo review regarding whether the trial court had personal jurisdiction over the non-resident defendants, we conclude that neither LG Chem nor LGCAI successfully refuted the existence of personal jurisdiction in Texas. The evidence supports the trial court's denial of LG Chem and LGCAI's special appearance.

*This Court's Ruling*

We affirm the orders of the trial court.


W. BRUCE WILLIAMS
JUSTICE


July 13, 2023

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.